UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **GOOD HOPE MISSIONARY BAPTIST CHURCH OF WESTLAKE** | **CASE NO. 2:21-CV-03844** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Church Mutual Insurance Company, S.I.'s Motion for Partial Summary Judgment Regarding Breach of Contractual Deadlines" (Doc. 24) wherein Defendant moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Church Mutual Insurance Company, S.I. ("Church Mutual") maintains that there is no coverage of any proofs submitted more than 180 days after the loss, and further moves to dismiss claims for replacement cost coverage for any repairs not completed by December 16, 2021.

## FACTUAL STATEMENT

On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana, which allegedly caused damage to Plaintiff, Good Hope Missionary Baptist Church of Westlake (referred to as "Good Hope" or the "Church"). During the relevant time period, the Church property was insured by Defendant, Church Mutual Insurance Company, S.I. ("CM").

The policy contains an endorsement entitled LOUISIANA CHANGES under form A 192 (11-08), which adds the following provision concerning the duties in the event of loss or damage:

> C. If the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, **you must submit the proof of loss to us within 180 days**; but this 180 day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying you access to your property.
> …
> D. When coverage applies on a replacement cost basis (as shown on the declarations Page) the following is added and supersedes any provision to the contrary with respect to the time period for completion of repair or replacement of loss or damage:
>
> If the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, we will pay on a replacement cost basis only if the repairs or replacement are completed within one year from the date of loss or damage or the issuance of applicable insurance proceeds, whichever is later, or as soon as reasonably possible thereafter.[1]

CM has made the following payments:

| | |
|---|---|
| October 1, 2020 | $200,000.00 |
| December 23, 2020 | $168,132.48 |
| **TOTAL** | **$368,132.48** |

In a letter dated December 16, 2020, from CM to Good Hope, CM stated the following: "CMIC will not pay on a replacement Cost basis for any loss or damage until

---

[1] Defendant's exhibit 1, CM-000576.

the lost or damaged property is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage."[2]

Good Hope has made the following payments for repairs to Perc Development, LLC:

| | |
|---|---|
| July 1, 2021 | $ 15,246.20 |
| July 14, 2021 | $ 52,925.06 |
| September 20, 2021 | $143,630.39 |
| January 12, 2022 | $ 22,202.59 |
| May 5, 2022 | $ 15,415.00 |
| October 27, 2022 | $ 50,345.00 |
| January 3, 2023 | $ 16,678.00[3] |
| **TOTAL** | **$316,442.24** |

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."

---

[2] Plaintiff's exhibit 6, p.1.
[3] Plaintiff's exhibit C.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

CM moves to dismiss any claims for coverage for any proofs submitted more than 180 days after the loss and claims for replacement cost coverage for any repairs not completed by December 16, 2021. Good Hope submitted to CM its "evaluation of this

claim as it pertains to property loss and property loss related damages."[4] The estimate provided by Plaintiff's contractor, Perc Development, totaled $886,934.13.[5]

Cavalry Construction, hired by CM, inspected the property and estimated the repairs at $561,627.48.[6] In addition, CM's professionals inspected the HVAC, electronics and contents, which resulted in a total replacement cost valuation of $587,582.48. After applying the 5% windstorm deductible of $89,950.00, and applying $129,582.48 for depreciation, CM calculates the actual cash value due to Plaintiff, pending repairs to be $368,132.48. CM asserts that it paid the balance of this amount due on December 16, 2020.[7]

CM complains that it reached out to counsel for Plaintiff from May 25, 2021, as to the status of the claims and repairs but received no response, other than counsel for Plaintiff had changed, and the new attorney [Jennifer Perez] was reviewing CM's offer.[8] CM remarks that it made several subsequent attempts as to the status of the claims and rebuild efforts, and further inquired as to why its [Calvary's] bid for repairs was rejected, but the only response it received was the instant lawsuit being filed on November 2, 2021.

CM states that it propounded written discovery requesting that Plaintiff "identify all repairs, ..." but that it received no meaningful response. CM asserts that Good Hope has failed to make sufficient repairs despite being paid $368,132.48. CM complains that

---

[4] Defendant's exhibit 3.
[5] Defendant's exhibit 4.
[6] Defendant's exhibit 11.
[7] Id.
[8] Defendant's exhibit 9.

Plaintiff has secretly hired Charles Norman, who has inspected the property three (3) times and prepared an estimate totaling $3,021,937.23.[9]

CM contends that the 180-day time limit provided in the policy applies and argues that any of Plaintiff's claims where proofs were submitted more than 180 days after Hurricane Laura must be dismissed. Specifically, CM asserts that those claims would include, but are not limited to, Perc Development's estimates submitted on May 13, 2021, and May 16, 2023, and Charles Norman's engineering report submitted on May 16, 2023.

In response, Good Hope asserts that CM ignores its own policy languages that any deadline to repair Good Hope's property only begins to run after "the issuance of applicable insurance proceeds."[10] Good Hope asserts that CM has not issued payments based on the recommendation of its own adjuster. Specifically, Good Hope informs the Court that even though CM received multiple Proofs of Loss as to the Church's structural damage, it failed to investigate this particular claim of damages. In addition, Good Hope complains that CM failed to timely make payments necessary to repair the Church. Good Hope relies on CM's Engle Martin inspection on September 10, 2020, which reported the need for a structural engineer and the September 22, 2020, Engle Martin report stating that the estimated loss was $1,450,000.[11] In addition, Good Hope relies on numerous other inspections by CM adjuster George Ben Hodges, Calvary Construction, Greer and Kirby, Co, Inc., and HVAC

---

[9] Defendant's exhibit 13.
[10] Defendant's exhibit 1, p. 101.
[11] Plaintiff's exhibit 8, Engle Martin Report, p.1, Doc. 27-4.

Investigators, LLC.[12] On November 18, 2020, Good Hope sent CM its Engineer's report,[13] and on May 13, 2021, Good Hope sent CM an updated estimate from Perc Development.[14]

Consequently, Good Hope contends that CM has received no less than ten Proofs of Loss for the claims, nine of which were within 180-days of Hurricane Laura, yet, CM failed to investigate the structural damage claim and pay the benefits owed under the policy. Good Hope reminds the Court that to date, CM has only paid it $368,132.48 despite the multiple Proofs of Loss that the damages exceed that amount and the reserves set by CM.[15]

CM counters that the May 2023 submissions are new claims made 990 days after the loss, and therefore are in violation of the contract because they are untimely. CM argues that it is entitled to a judgment that replacement cost value coverage, to the extent owed, should be limited to the repairs actually completed as of December 23, 2021.

The Court notes that CM was put on notice by its own adjuster, Engle Martin, that there was structural damage to the Church. In addition, CM's own adjuster estimated the Church's damages to be $1.4 million, yet as of December 23, 2020, CM has only paid Good Hope $368,132.48. In addition, CM's policy expressly states that in the event of a state of disaster or emergency, it will pay on a replacement cost basis if the "repairs or replacement are completed within one year from the date of loss or damage or the issuance

---

[12] Plaintiff's exhibit 27-8.
[13] Plaintiff's exhibit 27-5.
[14] Plaintiff's exhibit B.
[15] See also Plaintiff's exhibit 27-1, Claim Notes, p. 9 wherein CM noted a meeting on November 2, 2020, between the insured's attorney, contractor, CM's BC, BPP consultant, that reflects that CM had notice that the Church had hired an engineer to inspect for structural concerns due to movement in the structural wall between the foyer and the sanctuary.

of applicable insurance proceeds, whichever is later, or as soon as reasonably possible thereafter."[16] Therefore, the Court finds that there is a genuine issue of material fact as to whether or not Good Hope breached its contractual deadlines.

## CONCLUSION

For the reasons set forth herein, the Court will deny CM's Motion for Partial Summary Judgment Regarding Breach of Contractual Deadlines" (Doc. 24).

**THUS DONE AND SIGNED** in Chambers on this 13th day of June, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[16] Policy, Doc. 24-3, 101.